STATE OF WEST VIRGINIA

*In re* **J.N.-1**

**No. 19-0456** (Wood County 18-JA-76)

**FILED**
**April 6, 2020**
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Father J.N.-2, by counsel Courtney L. Ahlborn, appeals the Circuit Court of Wood County's April 4, 2019, order terminating his parental rights to J.N.-1.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Mindy M. Parsley, filed a response in support of the circuit court's order. The guardian ad litem, Ernest M. Douglass, filed a response on behalf of the child in support of the circuit court's order and a supplemental appendix. On appeal, petitioner argues that the circuit court erred in finding that he neglected the child, terminating his parental rights without imposing a less-restrictive dispositional alternative, and failing to make statutorily required findings in its final order.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In May of 2018, after the birth of J.N.-1., the DHHR filed an abuse and neglect petition alleging that the mother's parental rights to two other children had previously been involuntarily terminated due to physical abuse, medical neglect, inadequate housing, substance abuse, and inability to parent. The DHHR further alleged that the mother and petitioner had cognitive delays

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990). Additionally, because the child and petitioner share the same initials, we will refer to them as J.N.-1 and J.N.-2, respectively, throughout this memorandum decision.

1

and inadequate housing at the time of J.N.-1's birth. Specifically, the DHHR alleged that the parents were being evicted, had outstanding utility bills, and were unable to open another electricity account due to their outstanding balance. The parents reported being late on bills because of purchases for the baby and that their grocery bill was high from buying "a lot of junk food." Both parents reported receiving social security disability payments due to their "learning disabilities." The mother reported that she received Supplemental Nutritional Assistance Program and Women, Infants, and Children benefits. Petitioner admitted to the DHHR worker that he had been in a relationship with the mother "on and off" for the last seven years. The DHHR alleged that petitioner's relationship with the mother had been ongoing since her prior termination proceeding in 2014, as evidenced by J.N.-1's birth. The DHHR concluded that the mother failed to remedy the conditions of abuse and neglect that led to the prior involuntary terminations of her parental rights and that the parents lacked adequate skills to fulfill their caregiving responsibilities. Thereafter, petitioner waived his preliminary hearing and the circuit court appointed him a guardian ad litem due to his alleged cognitive delays and learning disabilities.

In August of 2018, the circuit court held an adjudicatory hearing. The DHHR worker testified that the mother failed to remedy the conditions of abuse and neglect that resulted in the prior involuntary termination of her parental rights to her older children because she had not completed any parenting classes, mental health counseling, substance abuse treatment, or gained employment or stable housing. Therefore, the DHHR explained that the children could not be placed with the mother, or, likewise, petitioner because he remained in a relationship with the mother. Petitioner suggested two locations as housing for the child. However, one location was with the mother at her sister's home, which was inappropriate because the mother lived there and her sister's parental rights to her own children had been previously terminated. The second location was petitioner's mother's home, but the DHHR worker testified that the home was inappropriate as petitioner's mother never completed a home study. Lastly, the DHHR worker voiced concerns with petitioner's ability to provide for the child without the help of others. After hearing the evidence, the circuit court continued the hearing until October of 2018. At that hearing, the circuit court adjudicated petitioner and the mother as abusing parents due to the lack of appropriate housing and inadequate parenting skills. After adjudicating the parents, the circuit court specifically stated

> Given their history and capacity, [this child] need[s] to be under the supervision of the [c]ourt until we determine their ability to parent. So although it's not one of your most aggravated circumstances cases, there's still sufficient evidence to adjudge the [child as] neglected . . . under the definition of the Code, because there are major questions as to whether these parents can properly parent [this child], especially the mother with her two aggravated circumstances cases, her prior terminations.

In December of 2018, the circuit court held a dispositional hearing wherein petitioner moved for a post-adjudicatory improvement period, but the circuit court held petitioner's motion in abeyance and ordered petitioner to undergo a parental fitness and psychological evaluation, which he completed shortly thereafter. In March of 2019, the circuit court held a final dispositional hearing in which it considered petitioner's parental fitness and psychological

2

evaluation that indicated that petitioner's prognosis for gaining the ability to parent or live independently was "extremely poor." Also, the DHHR worker testified that despite regularly attending classes and seven months of supervised visitation, petitioner did not grasp basic parenting skills and needed assistance with changing, feeding, and cleaning the child. Based upon petitioner's parental fitness and psychological evaluation, and the testimony of the DHHR worker, the circuit court denied petitioner's motion for an improvement period. Ultimately, the circuit court concluded that there was no reasonable likelihood that petitioner could substantially correct the conditions of abuse and neglect in the near future and that termination of his parental rights was necessary for the child's welfare. Accordingly, the circuit court terminated petitioner's parental rights.[2] It is from the dispositional order that petitioner appeals.

The Court has previously established the following standard of review:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011). On appeal, we find no error in the proceedings below.

First, petitioner argues that it was error for the circuit court to find that he neglected the child because he had housing throughout the proceedings. Petitioner contends that his inability to afford housing at the time of removal was based solely on a lack of financial means, which cannot be grounds for a finding of neglect of a child pursuant to West Virginia Code § 49-1-201. Also, petitioner argues that the circuit court improperly adjudicated him on the basis of his inability to parent when no such evidence was put forward by the DHHR other than his qualification for social security disability payments. We disagree.

We have previously noted as follows:

---

[2]The mother's parental rights were also terminated below. According to respondents, the permanency plan is for the child to be adopted by his foster family.

At the conclusion of the adjudicatory hearing, the court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. . . . The findings must be based upon conditions existing at the time of the filing of the petition and proven by clear and convincing evidence.

*In re F.S.*, 233 W. Va. 538, 544, 759 S.E.2d 769, 775 (2014). This Court has explained that "'clear and convincing' is the measure or degree of proof that will produce in the mind of the factfinder a firm belief or conviction as to the allegations sought to be established." *Id*. at 546, 759 S.E.2d at 777 (citation omitted). However, "the clear and convincing standard is 'intermediate, being more than a mere preponderance, but not to the extent of such certainty as is required beyond a reasonable doubt as in criminal cases.'" *Id.* (citation omitted).

Pursuant to West Virginia Code § 49-1-201, a

"[n]eglected child" means a child: (A) Whose physical or mental health is harmed or threatened by a present refusal, failure or inability of the child's parent, guardian, or custodian to supply the child with necessary food, clothing, shelter, supervision, medical care, or education, when that refusal, failure, or inability is not due primarily to a lack of financial means on the part of the parent, guardian, or custodian.

Having reviewed the record, we find that sufficient evidence existed to adjudicate petitioner as an abusing parent. On appeal, petitioner claims he had housing during the proceedings, but he ignores his admission to the DHHR that he had no housing nor a plan to obtain housing when the petition was filed, and that his subsequent housing options were inappropriate. As explained above, petitioner suggested he reside with the mother, which was inappropriate because the children could not be placed with the mother due to her failure to correct the conditions of abuse and neglect, including physical abuse and medical neglect, that resulted in the termination of her parental rights to older children. Notably, petitioner fails to address the DHHR's concern at adjudication that he refused to leave his relationship with the mother. Also, the mother's sister's house was inappropriate because she too had a history of Child Protective Services interventions. Lastly, petitioner's mother's home was inappropriate because she never completed a home study. Therefore, it was clear that petitioner continued to have inappropriate housing for the child, and had no apparent plan to obtain suitable housing at adjudication.

Although petitioner claims that his lack of suitable housing is due to a lack of financial means, petitioner collected a monthly income and admitted to failing to keep stable housing since the mother's previous termination in 2014. Despite receiving sufficient income, petitioner failed to properly budget his funds for living expenses. In light of the fact that petitioner had no suitable housing, nor a plan to obtain housing for the infant child, we find that the circuit court properly adjudicated petitioner based upon the lack of appropriate housing. Given these facts, there is no indication that petitioner's inability to obtain and keep housing was due primarily to a lack of financial means, and, therefore, the circuit court did not err by finding that the child was neglected pursuant to West Virginia Code § 49-1-201. We also find that petitioner was properly adjudicated upon a finding that he lacked proper parenting skills as he chose to stay in a

relationship with the mother despite the fact that she had made no efforts to address the conditions of abuse and neglect from the termination of her parental rights to the older children, thus jeopardizing his parental rights to the child at issue.

Petitioner next argues that the circuit court erred in terminating his parental rights without imposing a less-restrictive dispositional alternative, such as granting him an improvement period. Petitioner argues that he was likely to fully participate in an improvement period as evidenced by his cooperation with adult life skills classes, parenting classes, and supervised visits.

West Virginia Code § 49-4-610(2)(B) provides that the circuit court may grant a parent a post-adjudicatory improvement period when the parent "demonstrates, by clear and convincing evidence, that the [parent] is likely to fully participate in the improvement period." We have noted that "West Virginia law allows the circuit court discretion in deciding whether to grant a parent an improvement period." *In re M.M.*, 236 W. Va. 108, 115, 778 S.E.2d 338, 345 (2015). "Additionally, if a parent is unable to demonstrate an ability to correct the underlying conditions of abuse and/or neglect in the near future, termination of parental rights may proceed without the utilization of an improvement period." *In re Charity H.*, 215 W. Va. 208, 216, 599 S.E.2d 631, 639 (2004). Here, the circuit court relied heavily upon petitioner's parental fitness evaluation, which stated that petitioner's prognosis for parental improvement was "extremely poor." The evaluation further stated that petitioner could not provide the child with stable housing and that his "cognitive limitations and adaptive skill deficits" made it unlikely that he could live independently or parent a child. As the circuit court considered evidence regarding petitioner's potential to improve during an improvement period, we find no error in its denial of petitioner's improvement period as he was "unable to demonstrate an ability to correct the underlying conditions of abuse and/or neglect in the near future." *Id*. at 216, 599 S.E.2d at 639.

We likewise agree with the termination of petitioner's parental rights. Pursuant to West Virginia Code § 49-4-604(b)(6), circuit courts are directed to terminate parental rights upon findings that there is "no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the child's welfare. West Virginia Code § 49-4-604(c)(3) provides that a situation in which there is "[n]o reasonable likelihood that [the] conditions of neglect or abuse can be substantially corrected" includes when

> [t]he abusing parent . . . ha[s] not responded to or followed through with a reasonable family case plan or other rehabilitative efforts of social, medical, mental health, or other rehabilitative agencies designed to reduce or prevent the abuse or neglect of the child, as evidenced by the continuation or insubstantial diminution of conditions which threatened the health, welfare, or life of the child.

The record establishes that petitioner did not respond to or follow through with the DHHR's rehabilitative efforts. At the final dispositional hearing, the DHHR worker testified that she kept petitioner's supplies, such as formula and diapers, in her office for each visit for safe keeping; she had to repeat explanations to petitioner for the same simple tasks at every visit, including how to properly measure baby formula and how to change a diaper; she knew that petitioner never completed his assigned "homework" on his own; and she believed that petitioner could not independently change, feed, clean, and interact with the child after seven months of

intensive parenting education and guidance from the DHHR. While petitioner argues that a less-restrictive dispositional alternative should have been imposed, we have previously held that

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(c)] that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). Because the circuit court properly found that there was no reasonable likelihood that the conditions of abuse and neglect could be corrected in the near future and termination of petitioner's parental rights was necessary for the welfare of the child, we find no error in the circuit court's decision to terminate petitioner's parental rights.[3]

Lastly, petitioner argues that the circuit court failed to "state statutory findings required by W.Va. Code § [49-4-604(b)(6)]," such as whether the DHHR made reasonable efforts to preserve or reunify the family. Further, petitioner argues that the April 4, 2019, order is inaccurate as it fails to mention that petitioner presented evidence that he corrected the conditions of abuse and neglect. We disagree and find no merit to petitioner's arguments.

As discussed earlier, petitioner's housing alternatives were not acceptable and, therefore, petitioner never corrected this deficiency. Likewise, the circuit court stated at the final dispositional hearing that the DHHR had "made reasonable efforts in providing the services of [the Families Forward provider], as well as the parental fitness examination and so forth" to keep the family together. Further, in its April 4, 2019, order, the circuit court found that continuation in the home was contrary to the child's welfare because petitioner was unable to "effectively parent the child and the conditions that led to the filing of the petition cannot be changed." The circuit court also found that there was no reasonable likelihood that the conditions of abuse and neglect could be substantially corrected in the near future and that "the child needs continuity in

---

[3]Although not raised by petitioner, we note that the DHHR made a thorough effort below to determine whether petitioner could "adequately care for the [child] with intensive long-term assistance" as required by Syllabus Point 4 of *In re Maranda T.*, 223 W. Va. 512, 678 S.E.2d 18 (2009). The circuit court relied upon petitioner's parental fitness and psychological evaluation, which indicated petitioner was unlikely to live independently, let alone parent a young child without assistance. The DHHR provided petitioner with seven months of supervised visitations with hands-on guided parental education, yet he was unable to become proficient in caring for the child without supervision and direct assistance. Outside of the DHHR providing twenty-four hour supervision for petitioner and his child, petitioner would be unable to safely and adequately parent his child. Accordingly, we find that the circuit court properly terminated petitioner's parental rights only after the requirements of *Miranda T.* were met.

care and caretakers, and a significant amount of time is required to be integrated into a stable and permanent home environment." The circuit court concluded that "necessity for the welfare and best interest of the child" required the termination of petitioner's parental rights. Lastly, the circuit court explicitly considered the dispositional alternatives to the termination of parental rights as contained in West Virginia Code § 49-4-604(b). Accordingly, the circuit court made all required findings pursuant to West Virginia Code § 49-4-604(b)(6), and its April 4, 2019, order is more than adequate.

For the foregoing reasons, we find no error in the decision of the circuit court, and its April 4, 2019, order is hereby affirmed.

Affirmed.

**ISSUED**: April 6, 2020

**CONCURRED IN BY**:

Chief Justice Tim Armstead
Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Evan H. Jenkins
Justice John A. Hutchison

7